IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sean Goins, | C/A No.: 5:23-4933-TMC-KDW |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Sergeant Jenkins, | |
| Defendant. | |

Plaintiff Sean Goins, a pretrial detainee at the time of the filing of this action, proceeding pro se and *in forma pauperis*, brought this action pursuant to 42 U.S.C. § 1983 alleging Defendant Jenkins violated his constitutional rights. On May 17, 2024, Defendant Jenkins filed a Motion for Summary Judgment. ECF No. 41. Plaintiff filed a Response on June 17, 2024. ECF No. 45. Defendant filed a Reply on June 24, 2024. ECF No. 46. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation ("R&R") is entered for the court's review.

I.      Factual Background

Plaintiff alleges that the following events took place on August 30, 2023 while he was a pretrial detainee housed in the C-Pod of the Lexington County Detention Center ("LCDC"). ECF No. 1-3 at 8. Plaintiff contends that Defendant Jenkins, a sergeant at LCDC, appeared in C-Pod, and asked another inmate, referred to as Mr. Chavis, to take a COVID-19 test. ECF No. 1-3 at 5. According to Plaintiff, a nurse tested Plaintiff, while also recording his temperature as 102°F. *Id.* Plaintiff alleges he was standing close by to Mr. Chavis and heard Defendant Jenkins instruct Mr. Chavis to put on a mask and "say nothing to nobody." *Id.* Plaintiff alleges he "ran up to the nurse"

and told her to get Mr. Chavis out of the pod. *Id.* Plaintiff alleges he asked the nurse for a mask, but he was denied one. *Id.* Plaintiff alleges he informed Defendant Jenkins and Nurse Connor that he would tell every inmate in the pod about this information, and they left the unit. *Id.* Plaintiff alleges he then woke up the other inmates and informed them that Mr. Chavis was sick. *Id.* According to Plaintiff, when asked by the other inmates, Mr. Chavis explained that Defendant Jenkins told him to claim he had "a bad allergy," however he admitted to having COVID-19. *Id.* Plaintiff alleges he then informed Mr. Chavis he needed to leave the pod because Plaintiff has medical issues. *Id.* Plaintiff contends that Defendant Jenkins told the inmates to shut up, and she would not remove Mr. Chavis from the pod. *Id.* Defendant Jenkins also "lied," according to Plaintiff, and informed the inmates that COVID-19 was back and "everything is shut down." *Id.* Plaintiff alleges Defendant Jenkins left Mr. Chavis in the unit, and Mr. Chaves passed out. *Id.* at 6. Plaintiff attached the "affidavit" of Mr. Chavis to his Complaint, which tracks Plaintiff's allegations. *See* Affidavit of Andrew F. Chavis, attached at ECF No. 1-1.[1] Plaintiff alleges that his life was put in jeopardy due to his health condition. He requests $4,200 in damages and for Defendant Jenkins to be suspended for a specified number of days due to her negligence. ECF No. 1-3 at 9.[2]

---

[1] The affidavit is written in the same handwriting as Plaintiff, dated the same day Plaintiff drafted his Complaint, contains the same allegations as presented by Plaintiff, and is witnessed by Plaintiff. However, Defendant does not refute the substance of the allegations, though the details of the interaction in the pod are in dispute.

[2] To the extent Plaintiff's Complaint can be interpreted as requesting injunctive relief, the undersigned finds that he fails to make a proper showing under *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008). To establish the need for a preliminary injunction, the party seeking the injunction must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Beyond his request that Defendant be suspended, Plaintiff fails to make any showing that injunctive relief is proper in this case.

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own

argument, affidavit, or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc.Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III.    Analysis

Defendant has raised several arguments supporting her contention that summary judgment is appropriate as to all claims brought in this case. The undersigned has considered the arguments presented below. The undersigned notes that Plaintiff has brought this action against Sergeant Jenkins in her official capacity only; however, to the extent any of the allegations with the supplement to the Complaint could be construed as bringing claims against Defendant Jenkins in her individual capacity, the court will consider those arguments.

a.    Eleventh Amendment Immunity

As an initial matter, Defendant argues that, to the extent she was sued in her official capacity, Eleventh Amendment Immunity applies. The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment

also precludes suits against a state by one of its own citizens, as well as suits by citizens of another State. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Eleventh Amendment immunity also extends to "arms of the State" and state employees acting in their official capacity. *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 378 (D.S.C. Jan. 9, 2019). Relatedly, the Supreme Court has held that neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Defendant Jenkins provided an affidavit stating that she has been employed with the Sheriff of Lexington County for approximately seven years. Affidavit of Crystal Ann Jenkins-Merritt, ¶ 2, attached to Def.'s Motion, ECF No. 41-2. Defendant argues that because she is employed by the Sheriff of Lexington County and assigned to work at LCDC, she is a state actor or official and thus precluded from being sued in her official capacity. Plaintiff does not respond to this argument. In South Carolina, it has previously been established that a sheriff's office is an agency of, and a sheriff dominated by the state, "such that a suit against the sheriff in his official capacity is a suit against the State." *Stewart v. Beaufort Cty.*, 481 F. Supp. 2d 483, 492 (D.S.C. 2007) (citing *Gulledge v. Smart*, 691 F. Supp. 947 (D.S.C. 1988), *aff'd* 878 F.2d 379 (1989)). Sheriff's deputies are also entitled to Eleventh Amendment immunity. *McCall v. Williams*, 52 F. Supp. 2d 611, 615 (D.S.C. 1999) ("As an arm of the State, a deputy sheriff is entitled to Eleventh Amendment immunity from civil damages suits in federal court, unless the State expressly waived this immunity."). The undersigned agrees with Defendant and recommends finding that the Eleventh Amendment precludes suit against her in her official capacity. Because Plaintiff only sued Defendant in her official capacity, the undersigned need not consider the substance of his claims.

However, to the extent Plaintiff's Complaint can somehow be liberally construed to include claims against Defendant Jenkins in her individual capacity, the undersigned will consider the other arguments made by Defendant Jenkins, as well.

    b. Exhaustion of Administrative Remedies

Defendant Jenkins argues Plaintiff failed to exhaust his administrative remedies, which is a prerequisite to filing suit pursuant to 42 U.S.C. § 1983. The Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).[3] Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). A defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674,

---

[3] The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)).

681 (4th Cir. 2005).

To support her contention that Plaintiff failed to exhaust his administrative remedies, Defendants Jenkins provided the affidavit of Paula Hare, the grievance coordinator for LCDC for approximately 19 years. *See* Affidavit of Paula Hare, ¶ 2, attached to Def.'s Motion at ECF No. 41-3. Ms. Hare averred that LCDC has an established inmate grievance procedure involving multiple steps. Hare Aff., ¶ 4. She reviewed Plaintiff's grievance history at LCDC and found no record of him filing any grievances while being detained at LCDC. Hare Aff., ¶ 7. In Plaintiff's Complaint he alleges that he did file a grievance, but it was "denied in a subliminal way." ECF No. 1 at 2. At other points within Plaintiff's Complaint, he alleges that he filed a grievance for claims relating to "negligence and 8th Amendment violation[s]," and the grievance was denied. ECF No. 1-3 at 11. Plaintiff summarily alleges that the grievance process was completed, and he exhausted all of his remedies. *Id.* In his Response, Plaintiff states that he filed "numerous grievances" but the lieutenant staff "found false reasons to deny grievances." ECF No. 45 at 3. He further contends Defendant somehow found a reason to not process the grievance and dismissed the grievances on the kiosk machine, which he contends is the only way to file a grievance. ECF No. 45 at 3. He contends that he, along with approximately 50 other inmates, filed grievances which suddenly disappeared. ECF No. 45 at 3. In her Reply, Defendant contends that Plaintiff's bald assertion that he did in fact file a grievance, without more, cannot overcome Ms. Hare's sworn statement. ECF No. 46 at 3. Further, Defendant argues Plaintiff presents no evidence that he attempted to follow up on the status of any alleged grievance. *Id.* In other words, Plaintiff does not allege he sought to complete all steps of the grievance procedure.

A defendant may be estopped from raising the failure to exhaust administrative remedies as an affirmative defense when "prison officials inhibit an inmate's ability to utilize grievance

procedures." *Stenhouse v. Hughes*, No. 9:04-cv-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (citing *Abney v. McGinnis*, 380 F.3d 663, 667 (2d. Cir. 2004). Case law provides that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Stenhouse*, 2006 WL 752876, at *2 ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking administrative remedies.") (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2nd Cir. 2004)). A prisoner is excused from the requirement to exhaust his administrative remedies when they are literally or effectively unavailable. *Ross v. Blake*, 578 U.S. 632, 641-42 (2016). In considering Plaintiff's allegations and the record in this case, the undersigned does not find that the grievance process was unavailable to Plaintiff.

Ms. Hare affirmatively testifies that she found no grievance filed by Plaintiff within the records. She also explained the grievance process at LCDC, namely that a detainee must first contact a unit officer, and then must complete a supervisor request if the issue is not resolved. Hare Aff., ¶ 5. If the issue or concern persists, the detainee must file a grievance within 3 days of the issue occurring. Hare Aff., ¶ 5. Within ten days of filing a grievance, the grievance must be responded to by a grievance manager. Hare Aff., ¶ 5. If the detainee is still dissatisfied, the detainee must appeal the decision within 5 days. Hare Aff., ¶ 5. Plaintiff argues that he and many others filed "numerous grievances" but the staff, whom he does not identify, denied the grievances for false reasons. This allegation suggests that Plaintiff received a response to his grievance that was unsatisfactory to him, but he does not contend he appealed the response. Alternatively, in the next sentence of his Response, Plaintiff suggests that the grievances on the kiosk machine were not processed or were dismissed. However, aside from Plaintiff's allegations that his grievances were

8

not processed, he does not provide any detail about his alleged grievance, such as when he filed the grievance(s), what were the reasons that the grievances were denied and/or why they were not processed. In *Poe v. Bryant*, this court considered a plaintiff's argument where he claimed he was not provided a grievance, *and* that he had been told someone responded to his grievance. No. 9:12-cv-3142-RMG, 2013 WL 6158023, at *2 (D.S.C. Nov. 21, 2013). In that case, the plaintiff also included a statement in his Complaint that he tried to grieve every issue. *Id.* at 7. The court accepted the recommendation of the magistrate judge who determined that Plaintiff's "wholly unsubstantiated and self-serving statement is not sufficient to avoid summary judgment in light of the contrary documentary evidence provided to this Court." *Id.*; *see also Malik v. Sligh*, No. 5:11-1064-RBH, 2012 WL 3834850, at *5 (D.S.C. Sept. 4, 2012) (finding that a plaintiff's self-serving affidavit did not create a genuine dispute as to a material fact in light of other evidence disputing the credibility of plaintiff).

Further, the timing of Plaintiff's Complaint calls into question whether he genuinely sought to avail himself of the grievance system. Plaintiff alleges that the incident occurred on August 30, 2023. Within 14 days, on September 13, 2023, Plaintiff had signed and dated his Complaint and obtained the affidavit of another inmate, also dated September 13, 2023. The relatively short timeline of Plaintiff's drafting his Complaint and obtaining an affidavit provide further evidence that Plaintiff did not properly exhaust all steps of the grievance process. *See Malik*, 2012 WL 3834850 at *3 (explaining that properly exhausting administrative remedies includes using all steps and doing so properly). The fact that Plaintiff filed his Complaint within two weeks of the incident, his contradictory statements regarding whether he received inadequate responses versus being unable to actually file a grievance, and Ms. Hare's affidavit affirmatively stating Plaintiff

9

never filed a grievance lends the undersigned to find that there is no genuine dispute of material fact as to whether the grievance process was actually utilized.

Thus, for the reasons explained above, the undersigned recommends finding that Defendant has established Plaintiff failed to properly exhaust his claims, and therefore these claims should be dismissed. While the failure to exhaust administrative remedies is a prerequisite to filing suit, should the court not accept this recommendation, the undersigned will consider the remaining arguments made by Defendant below.

   c. No Physical Injury

Defendant argues that 42 U.S.C. § 1997e(e) prohibits a § 1983 claim where the plaintiff is seeking damages for mental and emotional injuries without more than a de minimis physical injury. *See Perkins v. Dewberry*, 139 F. App'x 599 (4th Cir. 2005) (stating that "de minimis physical injuries cannot support a claim for mental or emotional injury."); *Mayfield v. Fleming*, 32 F. App'x 116 (4th Cir. 2002) (finding no error in a district court concluding that a plaintiff's claim for damages is barred because he cannot show a physical injury). Courts have previously recognized that the COVID-19 pandemic has presented a serious risk of harm, including within the inmate population. *Best v. Sommers*, No. 1:23-cv-5539-MGL-SVH, 2023 WL 8437760 at *3 (D.S.C. Dec. 5, 2023). Here, Plaintiff's Complaint alleges that his life was placed in jeopardy. ECF No. 1-3 at 9. He also alleged he was weak and had no taste. *Id.* In his Response, he alleges he contracted COVID-19; however, Plaintiff does not establish that he experienced anything other than a de minimis physical injury or that he experienced a serious risk of harm beyond the fact that he was potentially exposed to an inmate suffering COVID-19 like symptoms.[4] Thus, the undersigned

---

[4] Plaintiff alleges he was weak and had no taste, but he does not expressly attribute that to a COVID-19 diagnosis. *See* ECF No. 1-3 at 9.

recommends barring any request for compensatory damages.

        d.   Conditions of Confinement Claim

Defendant next alleges that summary judgment is appropriate as to Plaintiff's conditions of confinement claims. In his Response, Plaintiff argues that Defendant failed to properly respond to the COVID-19 pandemic and failed to implement appropriate safety measures to protect Plaintiff. ECF No. 45 at 4. The gist of Plaintiff's entire argument is that Defendant Jenkins was negligent in failing to remove the inmate suffering from COVID-19 or COVID-like symptoms from C-Pod.

Conditions of confinement of pretrial detainees are to be evaluated under the Due Process Clause. *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992). A pretrial detainee, not having been found guilty of any crime, may not be subjected to punishment. *Id.* at 991. To prevail on such a claim, a pretrial detainee must show either (1) an expressed intent to punish or (2) a lack of a reasonable relationship to a "legitimate nonpunitive governmental objective, from which a punitive intent may be inferred." *Id.* (quoting *Martin v. Gentle*, 849 F.2d 863, 870 (4th Cir. 1988)). Plaintiff has not alleged that Defendant acted with an intent to punish. Rather, Plaintiff continually alleged Defendant Jenkins was negligent. However, mere negligence is not enough to show deliberate indifference. *Hixson v. Moran*, 1 F.4th 297, 303 (4th 2021). Nor has Plaintiff provided any evidence that Defendant Jenkins acted with an intent to punish Plaintiff when she was interacting with Mr. Chavis. While Plaintiff's allegations imply that Defendant Jenkins was trying to keep the fact that Mr. Chavis tested positive for COVID-19 hidden from the other individuals housed in C Pod,[5] Plaintiff has not alleged or otherwise shown that he had not already been

---

[5] According to Defendant Jenkins, in her years and experience as a corrections officer, she has never given out medical information of inmates or detainees to third parties. Jenkins-Merritt Aff., ¶ 8.

11

exposed to Mr. Chavis. Unfortunately, "[e]very person in the United States, whether in a detention facility or not, faces COVID-19 exposure." *Toure v. Hott*, 458 F. Supp. 3d 387, 408 (E.D. Va. 2020). Additionally, Defendant Jenkins has averred in her affidavit that the policy at LCDC when a detainee is suspected of having COVID-19 is to put the entire pod on lock down, which happened during this incident. Jenkins-Merritt Aff., ¶ 4. Thus, Plaintiff's contention that Defendant Jenkins' failure to immediately remove Mr. Chavis was in violation of his constitutional rights is without merit, and the undersigned recommends granting summary judgment to Defendant as to this claim.

Defendant Jenkins implicitly argues that any deliberate indifference claim brought by Plaintiff fails, as well. *See* Def.'s Br. at 8, ECF No. 41-1. In his Response, Plaintiff argues that Defendant violated his Eighth Amendment rights by "putting inmates in a death position" and failing to "properly respond to the COVID-19 pandemic." Pl.'s Br. at 4; ECF No. 45. A pretrial detainee's claim based upon deliberate indifference to a serious risk of harm is properly brought pursuant to the Fourteenth Amendment. *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988)). A pretrial detainee's claim must be evaluated under an objective standard. *Short v. Harman*, 87 F.4th 593, 611 (4th Cir. 2023). The Fourth Circuit outlines what a pretrial detainee plaintiff must allege to state such a claim: (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short*, 87 F.4th at 611. Under this standard, a plaintiff need not show "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in

harm." *Id.* Instead, it is sufficient to show that the defendant's action or inaction was "objectively unreasonable." *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). However, it is still not enough to allege a defendant negligently or accidentally failed to do right by the detainee. *Id.* at 611-12. Such is the case here. Plaintiff does not allege or otherwise establish that Defendant Jenkins intentionally, knowingly or recklessly acted in addressing the risk of Mr. Chavis's medical symptoms. Instead, it is clear, based on Plaintiff's allegations that Defendant Jenkins followed policy. As to Plaintiff's claim that he was not provided a mask, it is evident that Plaintiff had already been exposed to Mr. Chavis as he had been in the same pod as him. Further, Plaintiff conversely stated in his Response that inmates were provided masks "way after the fact," but that they were not regulation masks. *See* Pl.'s Br. at 3; ECF No. 45. The undersigned does not find that these contradictory facts are a sufficient basis to show deliberate indifference to Plaintiff's medical needs, particularly when he had already unknowingly been exposed to an individual with COVID-like symptoms.

      e. Qualified Immunity

Defendant Jenkins argues that even if Plaintiff has adduced any evidence that Defendant individually participated in a constitutional violation, Defendant would still be entitled to qualified immunity. Plaintiff did not respond to this argument. When a qualified immunity defense is raised, the courts apply a two-part test. First, the court must determine whether the facts viewed in the plaintiff's favor make out a violation of one's constitutional rights, and second, whether the violated right was clearly established at that time. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 233, 231 (2009)). The Fourth Circuit employs a split burden of proof for the qualified immunity defense. The plaintiff bears the burden of proving the first prong, and the [officer] bears the burden on the second prong. *Stanton v. Elliott*, 25 F.4th 227,

233 (4th Cir. 2022) (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)); *see also Mays v. Sprinkle*, 992 F.3d 295, 302 n.5 (4th Cir. 2021) (explaining that plaintiff has the burden of proof to show a constitutional violation, while defendant must show the violation was not clearly established). To be a clearly established right, it must be sufficiently clear that a reasonable official would have understood that what he or she is or was doing violates that right. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). Qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citing *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011)). Because the undersigned recommends that Plaintiff has failed to establish that Defendant Jenkins violated his constitutional rights, Plaintiff is unable to carry his burden to establish that qualified immunity is not appropriate in this case. For this reason, as explained above, the undersigned recommends finding Defendant Jenkins is protected by the doctrine of qualified immunity.

IV.     Recommendation

For the reasons explained above, the undersigned recommends granting Defendant's Motion, ECF No. 41, and finding that Defendant Jenkins is entitled to summary judgment as to Plaintiff's claims.

IT IS SO RECOMMENDED.

October 24, 2024
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).